■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRUZ DIAZ, Appellant.—Judgment, Supreme Court, New York County, rendered September 18, 1975, affirmed. We find nothing in this record from which it may be concluded that appellant received other than a painstakingly fair trial. Our dissenter argues, however, that defendant-appellant's self-inculpatory statements were improperly received in evidence. This argument is based on a claimed parallel with the teaching of *Bram v United States* (168 US 532). At the outset, we accept both the factual presentation of the evidence in this case as stated in the dissent, as well as the statement of the background of *Bram*—in each instance, as far as it goes. Bram, first mate of a vessel on the high seas, was accused of having murdered his captain, the latter's wife, and

the second mate. Brown, a seaman, was accused of the murder, but, when the vessel put into Halifax, the local police investigated at the request of the American Counsel. Before being questioned by a detective, Bram was stripped and his clothing searched. Following this indignity, he was then told "Your position is rather an awkward one. I have had Brown in this office, and he made a statement that he saw you do the murder." Bram replied, "He could not have seen me. Where was he?", to which the detective responded "He states he was at the wheel." Bram's comment: "Well, he could not see me from there." The detective: "Now, look here, Bram, I am satisfied that you killed the captain from all I have heard from Mr. Brown. But some of us here think you could not have done all that crime alone. If you had an accomplice, you should say so, and not have the blame of this horrible crime on your own shoulders." Bram concluded: "Well, I think, and many others on board the ship think, that Brown is the murderer; but I don't know anything about it." (The text of the speeches of each actor is transcribed from *Bram v United States, supra,* p 539.) Of course, in the '90's, there had been no warning as to constitutional rights, there was no intervention of influence by any relative—in our case, the defendant's mother—and it is at least doubtful whether anything in Bram's equivocal statements amounted to an admission. In any event, the crux of the court's opinion in *Bram* is revealed as follows: "The fact, then, is, that the language of the accused, which was offered in evidence as a confession, was made use of by him as a reply to the statement of the detective that Bram's co-suspect had charged him with the crime, and, although the answer was in the form of a denial, it was doubtless offered as a confession because of an implication of guilt which it was conceived the words of the denial might be considered to mean. But the situation of the accused, and the nature of the communication made to him by the detective, necessarily overthrows any possible implication that his reply to the detective could have been the result of a purely voluntary mental action; that is to say, when all the surrounding circumstances are considered in their true relations, not only is the claim that the statement was voluntary overthrown, but the impression is irresistably produced that it must necessarily have been the result of either hope or fear, or both, operating on the mind. It cannot be doubted that, placed in the position in which the accused was when the statement was made to him that the other suspected person had charged him with crime, the result was to produce upon his mind the fear that if he remained silent it would be considered an admission of guilt, and therefore render certain his being committed for trial as the guilty person, and it cannot be conceived that the converse impression would not also have naturally arisen, that by denying there was hope of removing the suspicion from himself. If this must have been the state of mind of one situated as was the prisoner when the confession was made, how in reason can it be said that the answer which he gave and which was required by the situation was wholly voluntary and in no manner influenced by the force of hope or fear? To so conclude would be to deny the necessary relation of cause and effect." *(Bram v United States, supra,* pp 562-563.) What was said by the *Bram* court is not an abstraction, but referable to the facts in that case. In the case we review, we do not have a *Bram* situation of overbearing officialdom. Indeed, the factual predicate for conviction by the jury was, when considered in the light of the court's charge, a finding that the defendant-appellant was not thus overborne, but made his statement freely

after his mother's appeal to him.* Quite obviously, the trial court was familiar both with *Bram* and with CPL 60.45 (subd 2, par [b], cl [i]). This is reflected by eight solid pages of the court's charge, reflecting the possibility —and so held by the jury by convicting—that a defendant in the described circumstances might, instead of being overborne, freely, voluntarily and truthfully, beyond a reasonable doubt, inculpate himself. First, the contentions of both sides are presented: that defendant was informed of his rights and voluntarily made his statement after speaking with his mother; on the other hand, that "appropriate warnings of his rights" were not given, that he was "subjected to force, coercion and undue pressure." Further, that defendant "maintains that many of his answers were suggested by the detective, and should be disregarded." The court then instructs "that a statement made to a police officer or to a District Attorney * * * is not to be considered * * * unless you are satisfied beyond a reasonable doubt that prior to any interrogation * * * the defendant was warned of his constitutional rights [detailing them]." "Further, you must be satisfied beyond a reasonable doubt that having been so advised the defendant * * * of his own choice answered the questions put to him." "Our law provides that evidence of a * * * confession * * * made by a defendant * * * may not be received in evidence * * * if such statement was involuntarily made." "A confession * * * is involuntarily made when it is obtained * * * by means of improper conduct or undue pressure which impaired a defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement." [Instruction repeated.] "It is not unlawful for * * * an Assistant District Attorney merely to persistently or repetitively question a person * * * or to confront one person with another in order to ascertain the facts * * * as long as such questioning does not exceed the bounds of propriety or amount to undue pressure. Whether the questioning in this case from the evidence that you have heard exceeded those bounds is for you to determine from the totality of all the circumstances surrounding the questioning of the defendant in the 13th Precinct on the morning of April 2, 1974. It will be for you to determine whether or not the questioning of the police officers exceeded the * * * bounds of propriety or undue pressure or what amounted to undue pressure. If you find that any of the alleged statements made by the defendant after being taken into custody * * * were not made of the defendant's own free choice under the circumstances, or if you have a reasonable doubt as to whether any statement was voluntarily made under the law as I have instructed you, you must disregard that statement and give it no weight whatsoever, as it would have no binding effect upon the defendant. This is so even though you may believe that the alleged statement that was made is, in fact, true." "In this connection, you have the right to examine the nature and quality of the statements to which I have referred [the transcripts]." "You may determine to accept as true, in whole or in part, any and all of the alleged statements, or to put aside any and all, in whole or in part * * * In summary, if you have a reasonable doubt that the warnings to which I have referred were given or a reasonable doubt that the statements attributed to the defendant were voluntarily made, then you should not consider such * * * statements in your determination of the guilt or innocence of the defendant as to any of the crimes being submitted for your

---

* Is it realistically to be argued that defendant was unduly influenced by his mother who had been unduly influenced by the Assistant District Attorney? At what point does this taint cease?

consideration." The court's instructions were characterized by defense counsel as "eminently fair". In the face of this, and the single telling fact that, until he had talked with his mother, defendant-appellant had adhered adamantly to his disclaimer of knowledge about the crime, it cannot be said that there was "a substantial risk that the defendant might [have] falsely incriminate[d] himself" (CPL 60.45, subd 2, par [b], cl [i]) or that anything said or done violated his constitutional rights. One last note: no case we have seen says in so many words that it is a constitutional imperative that a suspect not be told that another participant has accused him of unlawful conduct. Concur—Ross and Markewich, JJ. All concur herein and in the following concurring memorandum by Silverman, J.; Sandler, J. P., dissents in a memorandum.

Silverman, J. (concurring). CPL 60.45 (subd 2) provides in part as follows: "2. A confession, admission or other statement is 'involuntarily made' by a defendant when it is obtained from him: * * * (b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him: (i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself; or (ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States." In the present case, I do not think that the urgings by the Assistant District Attorney to the defendant that he tell the truth created "substantial risk that the defendant might falsely incriminate himself" (CPL 60.45, subd 2, par [b], cl [i]). It seems to me that the dissent reads out of the statute (CPL 60.45, subd [b], cl [i]) the qualifying phrase "which promise or statement creates a substantial risk that the defendant might falsely incriminate himself". I am not convinced that either reason or the established state of the law requires us to invalidate this statutory qualification. The Supreme Court has said, "that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *(Corbitt v New Jersey,* 439 US 212, 218.) I think pressure or encouragement merely to tell the truth is not necessarily invalid and that the New York statute draws the line at a point which is well within the permissible area. (This is not to say of course that pressures or encouragements which violate due process on well-established principles or the rules of *Miranda v Arizona,* 384 US 436, etc., are rendered valid if they do not fall afoul of the qualifying clause of subdivision "[1]." But absent such a violation, inducements of the types permitted by the New York statute are I think valid.) We live in the age of *Miranda.* This defendant was given the *Miranda* warnings including the right to remain silent, and the right to the assistance of counsel at the interrogation. Defendant chose not to remain silent or to have counsel and thereby, until he reinvoked those privileges, defendant waived his privilege against self incrimination, and his right to the assistance of counsel. Once defendant had *pro tanto* waived his privilege against self incrimination and his right to the assistance of counsel, I do not see what constitutional right of defendant was violated by the urging to him to tell the truth rather than a lie, or by the vague generalized suggestions that that would be better for him. Surely there is no free standing constitutional privilege to lie. The *privilege against self incrimination is a privilege to remain silent; it is not a* privilege to speak falsely. Constitutional prohibitions with respect to related subjects should have some measure of consistency and coherence. Otherwise, we have merely a hodgepodge of unconnected rules bearing no logical relationship to each other (cf. Fuld, J., in *Ando v Woodberry,* 8 NY2d 165,

167, in another connection: "a trackless morass of arbitrary and artificial rules"). The constitutional principles governing pleas of guilty obviously should have some relationship to those governing preindictment statements given to the prosecutor. In both cases there is involved a waiver of the privilege against self incrimination. The plea of guilty goes further than the preindictment statement. For the preindictment statement can be, as here it was, to some extent at least exculpatory. The plea of guilty has no element of exculpation about it; it is inculpation itself. It is a conviction. It is also a waiver of the right to jury trial or any trial, and of the rights of both confrontation and presentation of evidence in defense. (See *Boykin v Alabama,* 395 US 238.) Because of this, there was at one time a widespread belief, similar to that referred to in the language of some of the cases cited in the dissent, that any inducement or promise rendered the plea invalid. And so we had the unedifying spectacle of Judges solemnly asking the defendant whether any promise had been made and the defendant saying there had been none when the court, defendant and all the lawyers knew that the plea was a result of negotiation and agreement, including a promise by the prosecutor as to his recommendation for sentence, and sometimes a promise made by the Judge as to sentence. (See, e.g., *Blackledge v Allison,* 431 US 63; *Bordenkircher v Hayes,* 434 US 357, 362 ["this previously clandestine practice"].) In recent years that practice has changed. It is recognized that pleas of guilty can be negotiated, bargained and contracted for, with promises by the District Attorney as to the sentence that he will recommend, and even by the court as to the sentence that will be imposed. (See, e.g., *People v Selikoff,* 35 NY2d 227; *Blackledge v Allison, supra; Bordenkircher v Hayes, supra.)* "Specifically, there is no *per se* rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea." *(Corbitt v New Jersey, supra,* pp 218-219; accord *People v Pena,* 50 NY2d 400.) This is so, "notwithstanding the fact that every such instance is bound to have the concomitant effect of discouraging a defendant's assertion of his trial rights" *(People v Pena, supra,* pp 411-412). "This Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *(Bordenkircher v Hayes, supra,* p 364.) "As the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas." *(Corbitt v New Jersey, supra,* p 223.) If such inducement, encouragement, bargaining and promises are permissible to induce a plea of guilty, I am unable to see why, in the absence of a violation of the privilege against self incrimination or right to counsel, we should hold that it is forbidden for prosecuting attorneys to urge the defendant to tell the truth and to that end to make the vague and general suggestions to defendant here involved. In the end we return to the New York statute which I think draws the line at a reasonable and constitutional place.

Sandler, J. (dissenting). The defendant was convicted after a jury trial of murder and robbery in the first degree. The important question on this appeal concerns the admissibility of a confession made to an Assistant District Attorney, claimed to have been involuntary and induced by promises, direct and implied, that he would benefit by such an inculpatory statement. The precise issue is whether a confession is admissible in evidence when it resulted from an interrogation by an Assistant District Attorney in which the defendant was told repeatedly that he was "not helping himself" by denying his criminal involvement, was urged emphati-

cally and repeatedly to "help himself" by admitting and explaining his participation in the crime and co-operating with regard to another suspect, was warned that he might never again have an opportunity to tell his side of the story, was assured that by co-operating he would help himself "a long way" and "a lot", and was admonished that if he did not co-operate, he would "take the weight" for others. In my opinion the confession was erroneously admitted into evidence and the conviction must accordingly be reversed. The record establishes that defendant's confession (the second statement taken) was induced by an interrogation in which he was promised directly and implicitly that he would benefit significantly by inculpating himself and co-operating. The law is clear that statements so induced are not voluntary and their admission in evidence violates the Fifth and Fourteenth Amendments to the United States Constitution. *(Bram v United States,* 168 US 532; *Malloy v Hogan,* 378 US 1; *Robinson v Smith,* 451 F Supp 1278; *Commonwealth v Meehan,* — Mass —, 387 NE2d 527; *People v Tanser,* 17 Ill App 3d 482; *State v Biron,* 266 Minn 272; *State v Mullin,* 249 Iowa 10.)* In a robbery that occurred on March 26, 1974, one man was stabbed to death and another injured. Defendant was arrested at about 1:00 A.M. on April 2 after he was identified by a woman participant in the crime as one of two men who had also participated and as the one who had stabbed the deceased. After receiving *Miranda* warnings from a Detective Gomez, defendant denied any knowledge of the event. He repeated this denial when again advised of his rights by an Assistant District Attorney who arrived at the station house at about 3:55 A.M. The basic strategy of the following interrogation, which was transcribed by a stenographer, is apparent. Lacking any evidence to corroborate the accomplice, the Assistant District Attorney sought to secure a confession by persuading the defendant that he had conclusive evidence of the defendant's involvement in the robbery, was uncertain of the degree, if any, of the defendant's responsibility for the homicide, and desired his co-operation in identifying and arresting the other male participant. Pursuing this central theme, the Assistant District Attorney repeatedly told the defendant that he was "not helping himself" by his denials. This was varied with repeated and emphatic admonitions that the defendant should "help himself," the Assistant District Attorney going so far as to tell him that "you'll be helping yourself a long way unless you're going to take the weight for him," and again that the defendant by co-operating would help himself "a lot." Again and again the defendant was urged not to "take the fall" for his accomplices. The flavor of the interrogation is suggested by the following: "If you don't level with us we can't help you at all. You got a chance to help yourself right now. You don't want to take the fall for everybody. That's what you're asking to do * * * Why don't you try to help yourself. You got a chance. Tomorrow or the next day you may not be able to. * * * We're talking about murder here. At this point you're going to take the weight for the whole thing. That's pretty serious. Detective Gomez here, he wants to see you help yourself." At one point the Assistant District Attorney intimated that the nature of the charges to be brought against the defendant might be influenced by the degree of his co-operation. The significance of that, however, was arguably eliminated when, towards the end of the first statement, the Assistant District Attorney told the defendant that he was to be charged with murder and a separate charge of robbery. The first statement then ended with the Assistant District Attorney saying that by co-operating "I think you would help yourself a lot. The choice is yours", to which the defendant responded "I got nothing to say." The defendant was then

permitted to speak to his mother. According to Detective Gomez, "I told her that she should go and talk to him and try to get him to tell the truth to help himself out, that what he had told us was lies at that point." After speaking to his mother, the defendant indicated that he was willing to make a statement. Before repeating the *Miranda* warnings, the Assistant District Attorney made an introductory comment in which he said "I want to reiterate, by that, I want to tell you what I said before, by your cooperation you help yourself." The defendant then made the confession challenged on this appeal. The leading case on this issue remains *Bram v United States (supra)*, decided in 1897, the basic principles of which have been reaffirmed by the United States Supreme Court explicitly and without qualification in a group of recent decisions. (See, e.g., *Malloy v Hogan,* 378 US 1, 7, *supra; Shotwell Mfg. Co. v United States,* 371 US 341, 348; *Brady v. United States,* 397 US 742, 753; *Hutto v Ross,* 429 US 28, 30.) *Bram* involved the trial of a seaman for the murder of three people aboard ship. Taken into custody as the result of an accusation by another seaman suspected of the crime, Bram was questioned by a detective who told him in substance that he was satisfied that Bram was involved in the killing and went on to say: "If you had an accomplice, you should say so, and not have the blame of this horrible crime on your own shoulders." *(Bram v United States, supra,* p 539.)* The defendant responded by saying that he knew nothing about it but believed that the one who accused him was in fact the murderer. The Supreme Court reversed the conviction, holding that this statement was not voluntary, and (p 542) that its admission in evidence violated that "portion of the Fifth Amendment to the Constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" Quoting from Russell on Crimes (vol 3 [6th ed], p 478), the court set forth the controlling rule as follows (pp 542-543): " 'But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.' " The court described this statement of the law as "in harmony with the doctrine as expressed by other writers," and an accurate expression of "the result of a multitude of American and English cases" (p 543), which the opinion went on to review in detail. The basic principles set forth in *Bram* have been explicitly reaffirmed by the Supreme Court and represent the controlling law today. The significant recent developments in the Supreme Court can be briefly summarized as follows: First, the precise rule set forth in *Bram* (pp 542-543) that a confession is involuntary if "obtained by any direct or implied promises, however slight," has been repeatedly approved and restated by the Supreme Court. *(Malloy v Hogan, supra,* p 7; *Shotwell Mfg. Co. v United States, supra,* p 348; *Hutto v Ross, supra,* p 30; see *Brady v United States, supra,* p 753.) Second, in *Miranda v Arizona* (384 US 436, 461-462), the Supreme Court specifically held for the first time since *Bram* that the privilege against self incrimination embodied in the Fifth Amendment applies to involuntary confessions. Third, and particularly pertinent here, the Supreme Court has explicitly held that the protection against self incrimination set forth in the Fifth Amendment applies fully to State criminal trials. (See *Malloy v Hogan, supra.)* Notwithstanding the unqualified phrasing of the rule as set forth in

*Bram* and restated by the Supreme Court in cases cited earlier, there may be observed, in some of the Federal cases that have addressed the question, a reluctance to apply it with what one opinion called "wooden literalness." *(United States v Ferrara,* 377 F 2d 16, 17, cert den 389 US 908; see, also, *United States v Frazier,* 434 F2d 994; *United States v Reynolds,* 532 F2d 1150; *People v Arcediano,* 371 F Supp 457.)* In some of these opinions there appears to be a confusion between the self incrimination standard articulated in *Bram* with the very different due process criteria applied by the Supreme Court to claims of coerced confessions in State criminal trials prior to *Malloy v Hogan (supra),* and *Miranda v Arizona (supra).* More significantly, however, these decisions reflect an understandable reluctance to exclude confessions on the basis of general, speculative assurances not likely under the totality of circumstances to have induced the confession. None involved promises remotely approaching in scope, intensity and repetitiveness those disclosed in this record, nor did any involve promises by a prosecutor. Typical are *United States v Frazier (supra),* in which the statement found not to render the confession inadmissible was to the effect that co-operation would be made known to the authorities and there might be some consideration given by the United States Attorney, and *People v Arcediano (supra),* in which an agent promised the defendant, fearful of possible State prosecution, to do his best to retain him in Federal custody. The Federal case closest on the facts to the situation here is *Robinson v Smith* (451 F Supp 1278, *supra),* a Federal habeas corpus proceeding. As described in the opinion (p 1290), detectives had said in substance that if the defendant told the truth " 'he would probably receive the benefits of any leniency that may come to him in the courts' ", "that he would be helping himself by making a statement", that if he told the detectives what happened "they would be able to help him and he could also help himself." The United States District Court vacated this New York conviction, concluding as follows (p 1290): " 'Although the police promise of assistance to the defendant is not explicit the entire tone of the interrogation lends itself to the irresistible conclusion that implied help was a compelling motivation which induced the defendant to confess.' " (Cf. *United States ex rel. Williams v Fay,* 323 F2d 65; *Grades v Boles,* 398 F2d 409; *United States ex rel. Caserino v Denno,* 259 F Supp 784.) Far more frequently than in the Federal courts, the issue here has been raised in innumerable cases in State appellate courts. Some difference may be discerned between State courts which quite literally apply the rule that confessions are involuntary if induced by promises "however slight" and those which qualify that rule to some extent. However, as articulated in virtually every State appellate decision that addressed the issue, the rule as applied points unmistakably to the exclusion as involuntary of the confession challenged here. (See, e.g., *Commonwealth v Meehan, supra; People v Tanser, supra; State v Biron, supra; State v Mullin, supra; State v Tardiff,* 374 A2d 598 [Me]; *Lyter v State,* 2 Md App 654; *Womack v State,* 281 Ala 499; *State v Williams,* 33 NC App 624; *Robinson v State,* 229 Ga 14; *State v Crank,* 105 Utah 332.) The following fairly suggest the general approach. In *People v Tanser (supra),* the court said (p 486): "if the evidence, considered in the light most favorable to the defendant, shows that the police officers went further than a mere suggestion to tell the truth and persuaded an accused that if he made a statement he would be treated more leniently, the confession would be suppressed." And in *Commonwealth v Meehan (supra),* the court said (p 534): "An officer may suggest broadly that it would be 'better' for a suspect to tell the truth, may indicate that the person's cooperation would be

brought to the attention of the public officials or others involved, or may state in general terms that cooperation has been considered favorably by the courts in the past. What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence." After a comprehensive review of the decisions, the Iowa Supreme Court in *State v Mullin (supra)* phrased the rule in still more sweeping terms (p 17): "Few courts in the land go further than to permit a statement such as 'it would be better for you to tell the truth.' " I have found no decision of a State appellate court that sustained the admissibility of a confession in which there were promises even approaching those reflected in the transcribed statement here. Many confessions have been excluded as involuntary where the promises were far less sweeping and emphatic. Turning to the relatively few New York cases on the question, a somewhat unclear development is disclosed. In *People v McMahon* (15 NY 384), and in *People v Phillips* (42 NY 200), the Court of Appeals formulated the rule in language almost identical with that later used by the Supreme Court in *Bram*. In *People v McMahon (supra)*, the court said (p 386): "However slight the threat or small the inducement thus held out, the statement will be excluded as not voluntary." And in *People v Phillips (supra)*, the court reversed a conviction on the ground that a confession was involuntary when induced by a police officer's statements to a suspected horse thief (p 202) that "if he had taken the horse, it would be better for him to own up" and that the officer "thought the complainant would not be so hard on him if he could get his horse back." In 1881, the Code of Criminal Procedure was enacted, section 395 providing, in part, that a defendant's confession can be given in evidence against him "unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor". Thereafter, in the few cases arguably presenting a question similar to that presented here, the issue appeared to have been approached in terms of the statutory language. (See *People v Deacons,* 109 NY 374, 377; *People v Chapman,* 224 NY 463, 479.) In *People v Chapman (supra,* p 480), the defendant claimed that the police officer told him "that the best thing for him to do was to tell the truth and may be there would be some leniency shown him", but that he would have to talk to the District Attorney about the leniency. The court (p 481) found "nothing to connect the district attorney with any proposition to mitigate the proceeding against him or the punishment if a confession were made", a factual finding strikingly different from the situation disclosed here. However these cases may be interpreted, it is of course now established, as it was not then, that the issue concerns the Fifth Amendment to the Constitution of the United States and that the controlling principle of law is that described in detail above. Section 395 of the Code of Criminal Procedure was replaced by CPL 60.45, which became effective in September of 1971. This latter section described a confession as "involuntarily made" in pertinent part when obtained from the defendant: "2. * * * (b) By a public servant engaged in law enforcement activity or by a person then acting under his direction or in cooperation with him: (i) by means of any promise or statement of fact, which promise or statement creates a substantial risk that the defendant might falsely incriminate himself; or (ii) in violation of such rights as the defendant may derive from the constitution of this state or of the United States." The standard for determining whether a statement induced by a promise is "involuntarily made" is phrased differently in CPL 60.45 (subd 2, par [b], cl [i]) than the Fifth Amendment standard set forth in *Bram v United States (supra),* and repeatedly restated by the United States Supreme Court in cases cited

above. However, as already noted, the Supreme Court held definitively in *Malloy v Hogan (supra),* that a statement secured from the defendant in violation of the Fifth Amendment is not "voluntary" and must be suppressed. The same principle is explicitly repeated in CPL 60.45 (subd 2, par [b], cl [ii]) quoted above. Turning to the facts of this case, I find wholly unpersuasive the District Attorney's strained argument that in any event the varied statements made to the defendant by the Assistant District Attorney in the course of the first interrogation did not induce the later confession since the defendant persisted in his denials until after he had spoken to his mother. This is surely a very unrealistic reading of the record. The whole thrust of the interrogation was that the defendant should cooperate to help himself "a long way" and "a lot", and his mother was thereafter encouraged to urge him to co-operate in order "to help himself." It is a remote and speculative possibility that the defendant decided to abandon his denials and confess for some other undisclosed reason. The principle is of course fundamental that it was the District Attorney's burden to establish the voluntary character of the confession beyond a reasonable doubt *(People v Yarter,* 41 NY2d 830; *People v Huntley,* 15 NY2d 72, 78) a burden obviously not met here. For the reasons indicated above, the judgment of conviction should be reversed, the motion to suppress the confession granted, and the case remanded for a new trial.