THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN COLE, JR., Appellant.

Fourth Department, April 12, 1984

**APPEARANCES OF COUNSEL**

*Edward J. Nowak, Public Defender* (*Yolanda Villa* of counsel), for appellant.

*Howard R. Relin, District Attorney (Kathleen Majewski* of counsel), for respondent.

OPINION OF THE COURT

DILLON, P. J.

The jury convicted defendant of burglary in the third degree and grand larceny in the third degree, arising from the entry into, and theft of personalty from, a home located on Avenue D in the City of Rochester. The first and principal issue presented on defendant's appeal is whether, despite an order suppressing defendant's inculpatory statement as having been induced by a police officer's false promise, a prosecutor may use the statement to impeach defendant's credibility at trial.

In moving for a pretrial order suppressing a statement given by defendant to a Rochester police detective, defendant alleged, *inter alia,* that "false promises or misleading statements were made to defendant". In response to the motion, the answering affidavit stated: "The People do not oppose suppression of the statement since it was taken as a result of promises made to the defendant by law enforcement officers". County Court suppressed the statement without a hearing. On a subsequent motion, the court suppressed a second statement of defendant which had been made to a parole officer almost immediately after defendant's statement to the detective. On its finding that there was no attenuation of the inducement by "false promise" of the statement previously suppressed, the court granted the motion.

During trial, defendant sought an order proscribing use of the first statement on cross-examination of defendant, if he testified. Upon argument of the motion, both counsel agreed that defendant had been promised by the detective that if he gave the statement he would be prosecuted for a parole violation, but not for any other criminal charges. Relying upon the "rationale" of the decision in *Harris v New York* (401 US 222), the trial court ruled that the statement could be used by the prosecutor for impeachment purposes, and defendant chose not to testify.

In *Harris,* the Supreme Court held that a statement obtained in violation of a defendant's *Miranda* rights (see *Miranda v Arizona,* 384 US 436), and thus inadmissible as

evidence-in-chief, may be used to impeach the defendant's credibility "provided of course that the trustworthiness of the evidence satisfies legal standards" (*Harris v New York, supra,* p 224). The Supreme Court "weighed the incremental deterrence of police illegality against the strong policy against countenancing perjury" (*New Jersey v Portash,* 440 US 450, 458) and concluded that the latter should prevail (see, also, *Oregon v Haas,* 420 US 714). For reasons which will become obvious, a balancing of such interests would not be appropriate here.[*]

CPL 60.45 (subd 1) provides that a defendant's involuntarily made statement may not be received in evidence against him. A confession is involuntary when it is obtained from a defendant by a public servant engaged in law enforcement, by means of any promise which "creates a substantial risk that the defendant might falsely incriminate himself" (CPL 60.45, subd 2, par [b], cl [i]).

■ Here, the People conceded that the statement should be suppressed because it resulted from promises made by law enforcement officers. On that point there is no dispute. Yet the People now contend that the concession did not amount to an acknowledgment that the statement was involuntary. We reject that view as being inconsistent with the position necessarily taken by the District Attorney in response to the suppression motion. The mere fact that a promise was made by the detective did not require suppression of defendant's statement. If the promise was such that it did not create a substantial risk that a false confession could result, defendant's statement was competent evidence and should have been offered as part of the People's direct case (*People v Tarsia,* 50 NY2d 1, 11; *People v Diaz,* 77 AD2d 523, affd 54 NY2d 967). It was not, for the obvious reason that the statement was thought to be incompetent as having been involuntarily made within the meaning of the statute. No other plausible basis for requiring suppression is perceived by this court, nor is any offered by the People.

---

* We note, additionally, that however vague and unexplained might be the meaning of the proviso in *Harris* (see *People v Washington,* 51 NY2d 214, 219-220), defendant's statement, in the circumstances presented, could not survive any reasonable definition of the "trustworthiness" test.

If cross-examination is the "most efficacious test for the discovery of truth" (Richardson, Evidence [Prince, 10th ed], § 488, p 474; 5 Wigmore, Evidence [Chadbourn rev, 1974], § 1367), and we agree that it is, how destructive of that principle it would be to permit the prosecutor to impeach the credibility of a defendant by use of a statement suppressed as a matter of law because of its substantial potential for falsity. It is axiomatic that prosecutorial cross-examination must be conducted in good faith (see, e.g., *People v Duffy,* 36 NY2d 258, 262). That standard would not be satisfied if the prosecutor were allowed to use evidence which he has agreed, and the court has determined, may well be false.

We hold, therefore, that County Court erred in ruling that, if defendant testified, he could be cross-examined by use of the suppressed statement. The People argue, alternatively, that the error should be viewed as harmless because, it is claimed, defendant could have been cross-examined on similar admissions which he subsequently made to the parole officer. The argument fails, however, because given the reasoning of County Court in suppressing the statement to the parole officer, its use to impeach defendant's credibility would have been equally offensive. Since there is a reasonable possibility that the error might have contributed to defendant's conviction, it may not be viewed as harmless (*People v Crimmins,* 36 NY2d 230) and defendant is entitled to a new trial.

We make but brief comment on issues raised by defendant concerning the testimony of Lillian Vascukynas, a witness who resided near the burglarized home. After she had observed defendant and his companion on the street, and in the driveway of the burglarized home, and thereafter had seen two males inside the premises, she called the police to report the burglary. Following defendant's apprehension a short distance from the scene and within minutes of her phone call, defendant was taken to the area in front of the home of Mrs. Vascukynas where she identified him.

Defendant's pretrial motion to suppress both the showup and in-court identification by Mrs. Vascukynas was properly denied. Although one-on-one identification

procedures are never desirable and should be avoided when feasible, procedures that are less than ideal may be tolerable in the interest of prompt identification. This is particularly so where the identification is made, as here, in close proximity in time and space to the scene of the crime (*People v Love,* 57 NY2d 1023). Since we do not view the police conduct as impermissibly suggestive, it was not error to permit the witness to testify on the subject.

Even if such error were to be found, however, the in-court identification of defendant by Mrs. Vascukynas was based upon an independent source (see *People v Adams,* 53 NY2d 241, 251). She testified that she was a member of a "neighborhood watch" program, that she became suspicious of defendant and his companion immediately before the burglary, and that she focused her attention on them, as she was "supposed to". Her observations of defendant and his companion were unobstructed and were made in the daytime while the weather was clear. She first observed them from a distance of about 20 feet and her observation continued over a period of time, during which she saw their faces. Finally, her description of defendant's companion which she gave to police matched that given by others who had seen the two men together. It is clear, therefore, that there was an independent basis for the witness' in-court identification of defendant.

Accordingly, for the reasons heretofore stated, the judgment should be reversed and a new trial should be granted.

DENMAN, BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law and the facts, and a new trial granted.