STATE OF IOWA, appellee, v. CLARIS WILBUR MULLIN, appellant.

No. 49209.

(Reported in 85 N.W.2d 598)

12

OCTOBER 15, 1957.

Oscar E. Jones, of Des Moines, for appellant.

Norman A. Erbe, Attorney General, Raphael R. R. Dvorak, First Assistant Attorney General, Freeman H. Forrest, Assistant Attorney General, and Ray Hanrahan, County Attorney, for appellee.

LARSON, J.—The sole question before us in this appeal is whether the trial court committed prejudicial error by permitting jury consideration of a written confession allegedly procured as a result of inducements made by an interrogating officer.

Defendant, Mullin, an employee of the Des Moines Post Office, was accused of entering the rural home of Mrs. Trent, assaulting her, and taking from her some forty-five dollars in currency. She noted his car license, and through this information defendant was apprehended and taken before Mrs. Trent, who identified him. He was then taken to the county jail and questioned by the arresting officers for some forty-five minutes. Defendant gave them no statement, but when Officer Wm. Scarpino, who was in charge of radio communications at the jail and who knew the defendant, talked with him, defendant wrote and signed the alleged confession, Exhibit E. It contained a statement that its execution was his free and voluntary act, but it is now defendant's contention, as it was in the trial below, that the statements uttered therein are false, were secured by Officer Scarpino's promises and inducements and were as a matter of law inadmissible for any purpose whatsoever.

Officer Scarpino testified on the part of the State as follows: "I asked him, Mr. Mullin, if he was in trouble. Well, he said he didn't know and I says, 'Well, if you are in trouble, the best thing for you to do is to tell what you know.' I says, 'In that way more mercy is going to be granted to you by the authorities that will handle the prosecution if you come out and tell the truth of what happened, whether you did do it or not.' I asked him if he wouldn't make a statement and tell me exactly what happened and I gave him a piece of paper and pen and I says, 'Now, if you just write down here what you did, I will leave you in here alone.' I went out of the room. * * * I might have asked a question or two if he was out there then when he finally said he was I says, 'Why don't you just write what happened? Why don't you just take this paper and write what happened?' * * * there was one place, two or three places that I made the remark to him that it would be better for him if he were to come out and tell the truth * * *."

Later Officer Scarpino said, "The best I can explain about this matter about mercy of the Court is I says, 'If you did do this tell the truth. You will get farther with the Court by telling the truth rather than going over there and saying you didn't do it and denying it. In other words, it is best to come out and tell the truth. I don't think you have been in trouble before and the Court will take that where the prosecution can go along with the matter that way.' I believe I told him that in those words."

As to this testimony the learned trial court said: "* * * the Court feels that while the statement made by Mr. Scarpino, particularly the one about 'More mercy is going to be granted to you by the authorities if you tell the truth' is skating up closely to the line. The Court * * * will let the * * * so-called confession (into) evidence to be considered by the jury under proper instructions (which were given and not objected to) * * *." Defendant was given an exception to the ruling, now the basis of this appeal.

The exact words used by a witness of course are hard to remember, but it seems clear these statements were such as might well raise in the mind of the accused the hope that if he made the so-called confession he would receive better treatment, less severe punishment, and more mercy than if he denied his guilt

and was tried and found guilty of the offense by the jury. Statements so obtained consistently have been termed involuntary, not only by the courts of this jurisdiction, but throughout the country.

■■ I. The test of admissibility of a written confession is whether it was made freely and voluntarily without compulsion or inducement of any kind. Usually it is the trial court's duty to first determine as a preliminary question whether a confession was so made. Conflicts in the testimony giving rise to a question of fact concerning its procurement must under proper instructions be submitted to the jury. However, if it clearly appears the confession was induced by force, threats, promises or other improper inducements, the question is one of law for the court alone and the statement should be rejected. State v. Case, 247 Iowa 1019, 1022, 75 N.W.2d 233, 236; State v. Crisman, 244 Iowa 590, 592, 57 N.W.2d 207, 208, and citations; State v. Williams, 245 Iowa 494, 500, 62 N.W.2d 742, 745, and citations; Note 4, Drake Law Review 123.

■ Confessions to be accepted as voluntary and admissible must be free from inducements. State v. Jay, 116 Iowa 264, 89 N.W. 1070; State v. Thomas, 193 Iowa 1004, 1016, 188 N.W. 689, 694. In the Thomas case we approved the rule that a confession can never be received in evidence where the prisoner has been influenced by any threat or promise, " 'for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner' ", and therefore excludes the declaration if *any degree* of influence by force *or other inducement has admittedly been exerted* upon him. "Voluntary" was there defined as meaning a statement made of the free will and accord of the accused, without coercion, whether from fear of any threat of harm, promise or inducement, or any hope of reward. Also see to the same effect 20 Am. Jur., Evidence, section 537, page 456.

In State v. Jay, supra, Judge Ladd, in passing on the question of inducement sufficient to make a statement involuntary, quoted at page 266 of 116 Iowa from 3 Russell on Crimes, 6th Ed., page 478, to the effect that " 'The law cannot measure the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of

influence has been exerted.' " The court then concluded that the statement of the interrogating officer made to the prisoner that " "* * * it would be much *easier* for him before a court or jury' " if he would tell where the stolen horse was, "leaves no doubt but that the officer, before anything was said by Jay, *assured* him that it would go *easier* with him *if* he would tell where the mare, alleged to have been stolen, was, and we have only to determine whether this was sufficient inducement to justify the exclusion of the evidence." (Emphasis supplied.)

It was recognized there that precisely what word or words and conduct will constitute *an inducement* to make a statement inadmissible is often difficult to determine, but one thing is clear, that where there is no dispute as to the words used or their obvious meaning and the circumstances surrounding the expressions, then it is a matter of law upon which the court must pass and, in doing so, answer the query as to whether there appeared some assurance that the accused might gain in some manner relating to his punishment by issuing the solicited statement relative to his guilt. The answer in the Jay case was, as it must be here, that the statement by the officer "flattered the hope" of the defendant and was certainly in the nature of an inducement to speak or admit his guilt.

It is true in State v. Crisman, supra, cited by the State, we held the officer's statement that he told the defendant that "it would be 'better' or 'better or wiser' for him to tell the truth", was not such a statement as would reasonably give rise to a hope of gain, or that it in itself was not in the nature of an inducement to speak or sign a confession. Also see State v. Johnson, 210 Iowa 167, 170, 230 N.W. 513, 515, where defendant was advised by the officer "to tell the truth." Such advice, we said, did not make the resulting confession involuntary, and if that were all the officer said here we would affirm. Clearly he went beyond that admonishment.

Confessions are called voluntary when made neither under the influence of hope nor fear, but are attributable to that love of truth which predominates in the breast of every man, not contaminated by other motives more powerful within him, and which it is said, in the just and good man, cannot be countervailed. Such is the nature of the admonishment found in the

Crisman and Johnson cases. Confessions of this kind are the highest evidence of truth, even in cases affecting life. A free and voluntary confession is deserving of the highest credit because it is presumed to flow from the strongest sense of guilt, but a confession wrung from the mind by the flattery of hope, or by the torture of fear, comes in such questionable shape as to merit no consideration. See State v. Patrick, 48 N. C. 443. It must be concluded, then, that confessions induced by hope, or extorted by fear, are of all kinds of evidence the weakest in testimonial reliability.

II. The inducement offered by *one in authority* must of course be clear or reasonably inferred by the language used. Wigmore says in 3 Wigmore on Evidence, Third Ed., 1940, sections 823 and 824, the query is, "Was the inducement such that there was any fair risk of a false confession?" Were the statements made to the accused strong enough so that it could in reason be determined that the prisoner would lie and say he was guilty when he was not, so as to gain some special favor?

While it is hard to believe that a person would admit false facts showing his guilt without greater assurance than is sometimes held sufficient to make inadmissible alleged confessions, the courts feel compelled to go to the extreme to protect the weak or confused innocent party who may feel his chances of establishing his innocence are too remote to turn down what appears to be an assurance of leniency if he will confess to the crime of which he is accused. It seems more reasonable to assume that before an accused would falsify bad conduct for good conduct, he would demand some fairly specific assurance or promise of leniency, which is the obvious reason for the many decisions that a mere statement by an officer that it would be better or wiser to tell the truth, is not such an assurance or inducement as to make a statement by accused inadmissible. However, when the officer or officers go further and explain just how it will be better or wiser for the accused to speak, these statements may suddenly become more than an admonishment and assume the character of an assurance or promise of special treatment which may well destroy the voluntary nature of the confession in the eyes of the law.

In general, then, we may say the question is whether the language used amounts to an inducement which is likely to cause the subject to make a false confession. If so, the evidence must be considered involuntary and inadmissible.

A review of the decisions in other jurisdictions reveals like decisions. A promise to the subject made the statement involuntary, if he confesses—he will be released from custody, People v. Campbell, 359 Ill. 286, 194 N.E. 533, and Clash v. State, 146 Miss. 811, 112 So. 370; he will not be prosecuted, People v. Vinci, 295 Ill. 419, 129 N.E. 193; "it will go easier on you", State v. Ellis, 207 La. 812, 22 So.2d 181. But in Lewis v. United States, 74 F.2d 173, being told Indians usually get off easier, it was held not such an inducement so as to invite an untruthful confession. Few courts in the land go further than to permit a statement such as "it would be better for you to tell the truth." State v. Crisman, supra; Edwardson v. State, 255 Ala. 246, 51 So.2d 233; State v. Moore, 124 Ore. 61, 262 P. 859; State v. Williamson, 343 Mo. 732, 123 S.W.2d 42; State v. LaPean, 247 Wis. 302, 19 N.W.2d 289; State v. Ellis, supra. For other authorities bearing out that proposition see Ashcraft v. Tennessee, 322 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192; United States v. Mitchell, 322 U. S. 65, 64 S. Ct. 896, 88 L. Ed. 1140; Lyons v. Oklahoma, 322 U. S. 596, 64 S. Ct. 1208, 88 L. Ed. 1481; McNabb v. United States, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819; Ward v. Texas, 316 U. S. 547, 62 S. Ct. 1139, 86 L. Ed. 1663; Lisenba v. California, 314 U. S. 219, 62 S. Ct. 280, 86 L. Ed. 166; Annotation, 102 A. L. R. 605.

▬▬▬ III.   The test the court must apply, then, is: (1) Will the statements by the interrogating officer likely cause the subject to make a false confession? (2) Do they relate to an escape or mitigation of punishment to him? (3) Were the admitted statements made to the subject before the confession? Contending considerable discretion is placed in the trial court as to these findings, the State cites State v. Storms, 113 Iowa 385, 391, 392, 85 N.W. 610, 612, 86 Am. St. Rep. 380, where a statement of that nature appears. However, the court clearly stated that the discretion of the trial judge was "subject to review." It further found no promises or inducements were made

by any officer, and determined the circumstances produced no facts that would "induce the belief that the statements were the result of an involuntary condition of mind."

█ It is true that a written confession which on its face purports to have been freely and voluntarily given is prima facie voluntary and that the burden is on the defendant to show it was involuntary. State v. Crisman, supra; State v. Plude, 230 Iowa 1, 296 N.W. 732; State v. Hofer, 238 Iowa 820, 827, 28 N.W.2d 745. It is true also that where there is a conflict in the evidence as to whether certain things were or were not said, the question becomes one of fact and is proper for the jury. But where, as here, it clearly and undeniably appears by the State's own evidence that the alleged confession was made after the inducing statements by the officer—statements which tend to negative the essential free and voluntary nature of the confession—it is the duty of the court to sustain the objection to its use and refuse to submit it to the jury. State v. Harding, 204 Iowa 1135, 1145, 216 N.W. 642, 647; State v. Pardoe, 199 Iowa 842, 201 N.W. 75; State v. Heinz, 223 Iowa 1241, 275 N.W. 10, 114 A. L. R. 959; State v. Johnson, 241 Iowa 135, 39 N.W.2d 123.

█ IV. While the statements of Officer Scarpino were perhaps not intended to amount to a promise of a specific benefit, it is perfectly clear that the language was sufficient to justify the accused in a belief that if he confessed he would be given more lenient treatment, special consideration by the prosecuting authorities and the court, than he would if he denied his guilt and was found guilty in the eventual trial. Certainly the words used and the general impression created by them as disclosed by the record were sufficient to raise a hope in the mind of the accused—a hope that possibly would affect his decision to confess to the offense charged. Thus we think under the well established law the officer's statements must be held to have legally prevented the confession from being free and voluntary, and it should therefore have been rejected by the court. For this reason, and this reason alone, the conviction must be set aside and the defendant granted a new trial.—Reversed.

All Justices concur.