**STATE of Iowa, Appellee,**

v.

**Matias Rios QUINTERO, Appellant.**

**No. 90–44.**

Supreme Court of Iowa.

Jan. 22, 1992.

Linda Del Gallo, State Appellate Defender and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce L. Kempkes, Asst. Atty. Gen., William E. Davis, County Atty., and Joe Grubisich, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

Defendant's convictions of cocaine possession and fifth-degree theft were reversed by the court of appeals. Although we do so for different reasons, we agree that the defendant's convictions must be reversed. We accordingly affirm the decision of the court of appeals, reverse the judgment of the district court, and remand the case for a new trial.

Defendant Matias Rios Quintero and his three nephews were arrested for involvement in a drug sales operation. After his arrest on drug and theft charges, Quintero made incriminating statements to an investigating officer. Although the State vigorously contends otherwise, the court of appeals unanimously found the officer coerced the statements by threatening that Quintero's sixteen-year-old nephew would be tried as an adult and sent to prison unless Quintero cooperated.

■ The officer's taped interview of Quintero satisfies us that the incriminating statements were coerced. The officer speculated that both Quintero and his nephew would be harmed in prison and hinted that the boy would be abused either physically or sexually. The officer also speculated that, unless Quintero's statements matched those of his nephews, he would anger the judge and jury and suffer greater punishment. The officer's statements were made even worse by being misleading. Quintero's sentence would be imposed on the basis of Iowa Code section 902.3 (1989) (indeterminate sentence law), not any statement Quintero made to the officer. The officer also misled Quintero by suggesting that his nephew would automatically be tried as an adult, rather than as a juvenile under Iowa Code section 232.8(1).

I. The officer's statements and suggestions plainly qualify as coercion. *State v.*

*Mullin,* 249 Iowa 10, 14, 85 N.W.2d 598, 600 (1957) (statement is coerced unless it is made of free will and not from fear of any threat of harm). Where, as here, it clearly appears a confession is induced by force, threats, or other improper inducements, the question is one of law for the court alone, and the statements should not be admitted into evidence. *Id.*

II. In *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court, overruling its prior holdings, held that admission into evidence of an involuntary confession did not demand automatic reversal under the due process clause of the federal Constitution. The *Fulminante* holding implements a harmless error analysis.

In the present case the court of appeals majority held in effect that *Fulminante* should not be followed in Iowa as a matter of Iowa constitutional law. The majority held that, under the due process clause of the Iowa Constitution, the admission of an involuntary confession should never be harmless error and should result in an automatic reversal.

The court of appeals minority expressed a view that *Fulminante* should be followed in Iowa. Under the facts here, however, the minority concluded that admission of Quintero's involuntary confession was not harmless error. On further review the defendant contends that we, like the court of appeals majority, should eschew the *Fulminante* holding by applying an automatic reversal rule to the due process clause of the Iowa Constitution.

We have consistently claimed authority to interpret provisions in the Iowa Constitution so as to expand on personal liberties as defined by the United States Supreme Court in its interpretations of identical or similar provisions in the federal Constitution. We have, however, been reluctant to exercise that authority. The court of appeals dissenters pointed out that, in *Des Moines Joint Stock Land Bank v. Nordholm,* construing a different right in our state Constitution, we said:

There is no doubt that this court has the power, in interpreting the Constitution of Iowa, to reach a conclusion on the contract clause different from that reached by the Supreme Court of the United States when interpreting a similar clause of the Federal Constitution; that is to say, so long as the Iowa Constitution, as interpreted by this court, does not violate any provision of the Federal Constitution, there will be no complaint from the federal government.

But assuming that to be true, good policy and a desired consistency between the two Constitutions rather dictate that the interpretation of the two clauses be similar. Such consistency in interpretation will accomplish consistency in operation.

217 Iowa 1319, 1335, 253 N.W. 701, 709 (1934).

The court of appeals dissenters continued:

Iowa courts have seen fit to accord special respect and deference to the United States Supreme Court interpretations of language in the federal Constitution which is similar to language in the Iowa Constitution. *See State v. Davis,* 304 N.W.2d 432, 434 (Iowa 1981). In fact, when the Iowa and federal Constitutions contain similar provisions, the provisions are usually deemed to be identical in scope, import, and purpose. *Id.* at 434; *Redmond v. Ray,* 268 N.W.2d 849, 852 (Iowa 1978); *In Interest of Johnson,* 257 N.W.2d 47, 49 (Iowa 1977); *Chicago Title Ins. Co. v. Huff,* 256 N.W.2d 17, 23 (Iowa 1977); *Davenport Water Co. v. Iowa State Commerce Comm'n,* 190 N.W.2d 583, 593 (Iowa 1971).

■ III. We need not, and therefore should not, invoke the Iowa Constitution in resolving the present appeal; we have consistently refrained from answering constitutional questions when the issue can be otherwise resolved. This has long been our rule. *Dubuque & Dakota Ry. v. Diehl,* 64 Iowa 635, 640, 21 N.W. 117, 120 (1884) (we decide constitutional questions only when necessary ... parties cannot compel us to do so by waiver of issues or agreement). It is still our rule. *In re J.A.N.,* 346 N.W.2d 495, 498 (Iowa 1984).

■ The present case lends itself to resolution without resorting to constitutional principles. A coerced confession should not be admitted in evidence because of its inherent lack of reliability. Our cases have long reversed criminal convictions for admitting involuntary confessions. The rule was developed, not as a constitutional principle, but because the law has no way of measuring the improper influence or determining its effect on the mind of the accused. *See, e.g., State v. Jay*, 116 Iowa 264, 266, 89 N.W. 1070, 1071 (1902). Our more recent cases, which added a constitutional dimension to the rule excluding involuntary confessions, nevertheless persisted in grounding the exclusions of coerced confessions on factors pointing to their lack of reliability. *See State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982).

We hold that Quintero's involuntary confession was inadmissible, not on the basis of a constitutional principle, but as a matter of the law of evidence. Its probative value, if any exists, is substantially outweighed by the danger of confusion of issues and would be misleading to the jury under Iowa rule of evidence 403.

We need not speculate whether admission of a coerced confession could ever be harmless. It certainly cannot be said to be harmless in this case.

We have also considered and now reject the State's other assertions, including a claim that Quintero waived error.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED AND REMANDED.

All Justices concur except NEUMAN, J., who concurs in the result.