# IN THE COURT OF APPEALS OF IOWA

No. 13-0380
Filed March 12, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEANTHONY D. KIRKLAND,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Kellyann M.

Lekar, Judge.


        Appeal from convictions of robbery in the first degree, theft in the first

degree, and carrying a dangerous weapon. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and James Katcher, Assistant

County Attorney, for appellee.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**MCDONALD, J.**

Deanthony Kirkland appeals from his convictions of robbery in the first degree, theft in the first degree, and carrying a dangerous weapon. He claims his attorney was ineffective in not seeking to suppress incriminating statements and physical evidence on common-law evidentiary grounds in addition to the constitutional grounds actually raised. He also claims the court erred in not granting his motion to suppress the same statements and physical evidence on the constitutional grounds actually raised.

I.

At approximately 9:00 p.m. on October 7, 2012, a Pizza Hut delivery driver delivered pizza to Nathan Jacobi and Andrew Hoffman's apartment. Later that night, the same delivery driver returned to the apartment with three others and robbed Jacobi and Hoffman at gunpoint. It was the delivery driver who brandished the gun during the robbery. The four men stole a gold necklace, a silver necklace, a PlayStation 3, four PlayStation controllers, a bottle of Ciroc vodka, and Jacobi's and Hoffman's cell phones.

After Jacobi and Hoffman reported the incident to police, the police contacted Pizza Hut and determined Kirkland was the delivery person for Jacobi and Hoffman. Local law enforcement was familiar with Kirkland and knew where he lived. The police went to his residence and stopped Kirkland's vehicle as Kirkland was leaving his house. There were two passengers in Kirkland's vehicle: Malik Edwards and Jacquel Williams. Williams was wearing a gold necklace matching the description of the one stolen. Edwards had a silver

necklace in his front pocket, also matching the description of the one stolen.  A bottle of Ciroc vodka was found in the vehicle.  All three men were taken to the police station for questioning.

Williams cooperated with the police.  Williams admitted his involvement in the robbery and stated that Kirkland, Edwards, and one other person were also involved.  Williams told the police that Kirkland used a silver and black handgun during the robbery.  Williams' description of the handgun Kirkland used during the robbery matched Jacobi's description of the same.

At the same time Williams was giving his statement, Kirkland was being questioned by Officer Girsch.  Prior to questioning, Kirkland was notified of his *Miranda* rights.  Kirkland initially agreed to be interviewed.  After denying any knowledge of or involvement in the incident, Kirkland then invoked his rights to silence and to an attorney.  Officer Girsch terminated the interview and began leaving the interview room.  As Officer Girsch was leaving, Kirkland asked him to wait and said, "hey, I got some questions for you."  Officer Girsch explained to Kirkland the interview could not continue because Kirkland invoked his right to silence and his right to an attorney.  Kirkland repeatedly stated to Officer Girsch that he had questions and wanted to continue to speak with Officer Girsch without an attorney.  After he was convinced Kirkland wanted to continue to speak without counsel, Officer Girsch continued the questioning and confronted Kirkland with Williams' statements.  Officer Girsch then truthfully told Kirkland that another officer was preparing a search warrant for Kirkland's home based, in part, on Williams' statement.  Officer Girsch asked Kirkland whether any

weapons were in the home, and Kirkland denied the presence of any weapons. Officer Girsch then explained that the presence of weapons in the home may pose a risk to those executing the warrant and accordingly may change the manner in which the warrant was executed. Kirkland then admitted he had an inoperable handgun in a pillow case in his bedroom.

The police executed the warrant and found the handgun as Kirkland described. At no point did Kirkland admit participating in the robbery or admit that the weapon seized from his home was the weapon used in the robbery.

Kirkland's trial counsel moved to suppress Kirkland's statements regarding the gun and the gun itself on the grounds that the statements and gun were obtained in violation of Kirkland's Fourth and Fifth Amendment rights under the United States Constitution and sections Eight and Nine of the Iowa Constitution. At the suppression hearing, Officer Girsch testified about the interview with Kirkland; specifically, their discussion regarding execution of the search warrant:

> Q. And I think you testified you informed Mr. Kirkland that that was being done, is that correct? A. Yes. Yes, that was already in the process, from all of the evidence we had already gathered.
>
> Q. And the gun was one of the things that was going to be searched for? A. Yes. You know, I informed him of that. He began to get worried. I asked him, you know, a very common question. If we have someone down at the station and we know we're going to be applying for a warrant for their house we always ask, you know, weapons, anything that's a threat to law enforcement that can jeopardize the safety of us or the people in the house? So I asked him if he had any—or if there was any weapons in the house. He said, no. We began to talk a little further. I mentioned that if there are weapons, it will determine how this search warrant is carried out from a tactical point of view and a safety point of view. Usually if we know there's a gun in the house and there's knowledge of it and there's a threat inside that could use that against law enforcement, that will determine whether we use our tactical unit, which is more highly trained, better armor, more, sophisticated

skills and training, equipment, things like that. Or we can use our patrol unit, VCAT Investigative Division, things like that. I explained this to him that, you know, this is a safety issue. If there's something in there, a weapon of some sort, you need to be honest with me. I knew he had young children in the house that I believe were his brothers and sisters. You know, I explained to him that, you know, like I said, this will determine how we, you know, whether it's a flash-bang entry, a no knock warrant, things like that, could jeopardize the safety of people inside the house. Or this gun somewhere in the house where these young kids could get to it. You know, I said, if it's in there we need to get it out. So eventually he said, okay, the gun is up in my bedroom. He said in a pillowcase next to his bed. He described the gun's condition, saying it was unloaded. He also described the exact location of where it was in his bedroom in this pillowcase next to his bed. So at that point I knew he had direct knowledge of where this gun was and what its condition currently is. He even talked about the gun's magazine not working—or he said the gun wouldn't fire because the magazine was broken. So at that point then I left the interview room because I knew Sergeant McKeough was almost done with typing the search warrant.

The district court denied the motion to suppress, concluding that the statements and the gun itself were not unconstitutionally obtained. At trial, Kirkland's statements regarding the gun and the gun itself were admitted into evidence. The jury convicted Kirkland robbery in the first degree, theft in the first degree, and carrying a dangerous weapon, and this appeal followed.

II.

A.

Kirkland acknowledges his attorney moved to suppress Kirkland's statements regarding the gun and the gun itself under the federal and state constitutions. Kirkland asserts, however, his attorney provided ineffective assistance by not seeking to suppress the statements on the additional ground that the statements were involuntary and inadmissible under our evidentiary rule set forth in *State v. Quintero*, 480 N.W.2d 50, 52 (Iowa 1992), and *State v.*

*McCoy*, 692 N.W.2d 6 (Iowa 2005), and the gun was the fruit of the involuntary statements.

An ineffective-assistance-of-counsel claim is typically resolved in postconviction-relief proceedings. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). When such a claim is presented on direct appeal, however, the "court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3). Where, as here, the record is sufficient to permit a ruling, we will address the claim on direct appeal. *See Maxwell*, 743 N.W.2d at 195.

To establish a claim for ineffective assistance of counsel, Kirkland must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Failure to prove either element is fatal to an ineffective-assistance claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). With respect to the prejudice prong, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the defendant to establish "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 694). We conclude Kirkland's counsel did not breach an essential duty in failing to file a motion to suppress on the additional ground.

In *Quintero*, the officer elicited a confession "by threatening that Quintero's sixteen-year-old nephew would be tried as an adult and sent to prison unless Quintero cooperated." 480 N.W.2d at 52. The court held the confession was involuntary and "was inadmissible, not on the basis of a constitutional principle, but as a matter of the law of evidence. Its probative value, if any exists, is substantially outweighed by the danger of confusion of issues and would be misleading to the jury under Iowa rule of evidence 403." *Id.* In *McCoy*, the defendant admitted to being present at a homicide, cleaning the crime scene, and helping others to dispose of the body but only after the officer, on twenty-five instances while interrogating the defendant, told the defendant that even if he admitted to participating in a homicide he would not be in trouble if he did not pull the trigger. The court reiterated the general rule that "if it clearly appears the confession was induced by force, threats, promises, or other improper inducements, the question is one of law for the court alone and the statement should be rejected." 692 N.W.2d at 27-28 (citing *State v. Mullin*, 85 N.W.2d 598, 600 (1957)). The court then held the officer's statements rendered the confession inadmissible and trial counsel breached an essential duty owed the defendant by failing to move to suppress the statements. *See id.* at 600.

In both *Quintero* and *McCoy*, the officers' statements were false. In both cases the officers' statements directly linked the defendant's willingness to confess to specific detriments or benefits. It is the link between the confession and the identified consequences—and the concomitant psychological pressure created thereby—that casts doubt on the reliability of any confession so

obtained. *See McCoy*, 692 N.W.2d at 28 (stating the line is crossed when the officer tells the suspect what is gained from confessing); *id.* at 27-28 ("Voluntary" [is] defined as meaning a statement made of the free will and accord of the accused, without coercion, whether from fear of any threat of harm, promise or inducement, or any hope of reward."); *see also State v. Howard*, 825 N.W.2d 32, 41 (Iowa 2012) (disapproving of officer leading defendant to believe confession to sex abuse would result in treatment in lieu of punishment); *State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012) (disapproving of officer threatening defendant with humiliation in the newspaper if defendant did not confess and promising that defendant could go along with his life if he did confess); *State v. Polk*, 812 N.W.2d 670, 676 (Iowa 2012) (inducing confession with assurances the prosecutor would be more likely to work with a cooperating individual and threatening defendant would not see his children for a long time unless he confessed).

Officer Girsch's statements in this case do not rise to the level of impermissible threats, promises, or improper inducements found to be unacceptable. Officer Girsch did not use the stick of a direct threat or the carrot of promised leniency. Instead, Officer Girsch merely provided Kirkland with truthful information regarding law enforcement's efforts to obtain a search warrant and their planned execution of the warrant. Law enforcement's provision of truthful information to a suspect regarding lawful investigative activity does not cause the psychological pressure that casts doubt on the reliability of the statement because it does not link the statement to any identifiable gain or loss.

*See State v. Owens*, 418 N.W.2d 340, 344 (Iowa 1988) ("The officers were simply informing Owens through his attorney what they were already entitled to do as a matter of law: to secure a warrant and use force, if necessary, to carry it out."); *see also United States v. Culp*, 472 F.2d 459, 461 n.1 (8th Cir. 1973) (holding law enforcement officers' statement that they will attempt to obtain or are getting a warrant does not serve to invalidate an otherwise consensual search).

Accordingly, any motion to suppress based on the evidentiary rule would have failed. Trial counsel had no duty to file a meritless motion. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("We have held that counsel has no duty to raise an issue that has no merit.").

## B.

Kirkland next contends the trial court erred in denying his motion to suppress the statements and the gun itself due to them being obtained as a result of coercion in violation of the federal and state constitutions. We review the denial of a motion to suppress on constitutional grounds de novo. *See State v. Leaton*, 836 N.W.2d 673, 676 (Iowa Ct. App. 2013). We conclude Kirkland's argument is without merit.

There is no evidence of coercion here. Kirkland was Mirandized but initially agreed to be interviewed. After Kirkland terminated the interview, Officer Girsch attempted to leave the interview room before Kirkland reengaged him. Only after Officer Girsch confirmed that Kirkland wished to continue without an attorney, did Officer Girsch continue with the interview. As discussed above, Officer Girsch's statements regarding the search warrant are not of the type that

create impermissible psychological pressure compelling a statement. *See Owens*, 418 N.W.2d at 344. Because the court did not err in not suppressing the statements or the gun itself, there is no need to demonstrate the "error" was harmless. *See State v. Effler*, 769 N.W.2d 880, 893 (Iowa 2009) (conducting harmless error analysis "when a defendant's constitutional rights have been violated").

III.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**