# IN THE COURT OF APPEALS OF IOWA

No. 20-1688
Filed August 3, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT STEWART EAKIN**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Hardin County, John R. Flynn, Judge.

Robert Eakin appeals his three convictions for third-degree sexual abuse, claiming the interviewing officer made improper promises of leniency and the district court gave an improper non-corroboration jury instruction. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

A child claimed that Robert Eakin sexually abused her. The captain of the local police department asked Eakin if he would come to the station for an interview. Eakin agreed. The interview was videotaped and transcribed. Shortly after it ended, the State charged Robert Eakin with one count of second-degree sexual abuse and four counts of third-degree sexual abuse.

Eakin moved to suppress the statements he made to the captain. The district court denied the motion. The child testified at trial, as did Eakin and others. At the close of trial, the jury was instructed that the child's testimony did not need to be corroborated. The jury found Eakin not guilty of the second-degree sexual abuse count and the first of the four third-degree sexual abuse counts. The jury found him guilty of the remaining three counts of third-degree sexual abuse, charged as counts III, IV, and V.

On appeal, Eakin contends (1) the police captain made promises of leniency while interviewing him that should have resulted in the suppression of his statements and (2) the district court erred in giving the non-corroboration instruction.

**I.        *Promises of Leniency—Suppression Ruling***

"[A] confession can never be received in evidence where the prisoner has been influenced by any threat or promise." *State v. Hillery*, 956 N.W.2d 492, 499 (Iowa 2021) (citation omitted). The test is "whether the language used [by the officer] amounts to an inducement which is likely to cause the [defendant] to make a false confession.'" *State v. Howard*, 825 N.W.2d 32, 40 (Iowa 2012) (quoting

*State v. Mullin*, 85 N.W.2d 598, 602 (Iowa 1957)). The parameters have been set forth as follows:

> An officer can ordinarily tell a suspect that it is better to tell the truth. The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage is to be gained or is likely from making a confession. Ordinarily the officer's statements then become promises or assurances, rendering the suspect's statements involuntary.

*State v. Madsen*, 813 N.W.2d 714, 727 (Iowa 2012) (quoting *State v. Hodges*, 326 N.W.2d 345, 349 (Iowa 1982)). "[R]eview of the district court's ruling on promises of leniency under th[is] common law evidentiary test is for corrections of errors at law." *Howard*, 825 N.W.2d at 39.

Eakin contends several categories of statements made by the captain qualified as promises of leniency, among them, the captain's repeated suggestion that a confession would "protect[] his wife from criminal charges." This type of assertion is "[i]nterrelated with 'promissory leniency,'" with a focus "upon a psychological confession-connected inducement." *State v. Hilpipre*, 242 N.W.2d 306, 312 (Iowa 1976).

In *Hilpipre,* "the named investigators promised [the defendant], before any self-incriminating statements had been voiced or given by him, that if he cooperated his former wife 'would be left alone.'" 242 N.W.2d at 312. "[S]uch assurance," the court said, "was admittedly given in order to gain defendant's 'cooperation.'" *Id.*

The captain voiced the same type of sentiment. He told Eakin:

> [I]f something happened, *you probably are not going to want to get your wife in here and bring her in the middle of this because i[f]—that was one of the things she said, that [she] caught you guys [—a]nd if that's the case, you know, [she] could be in just as much, if not more,*

*trouble.* So, you know, if you made a mistake, you had a bad lapse in judgment, you need to be accountable for it *and not bring her into this and bring—and get her into some trouble. Because then who's going to look out for her mother and your boys?*

(Emphasis added.) The captain continued, "[P]utting somebody else under the sword, so to speak, to where they're going to potentially be in trouble for something you did. That's adding more to it." And he said, "I don't want to have to, you know, get a bunch of other people involved that don't need to be." He followed up with, "[L]ike I said, I don't want [your wife] to get in over her head in this when she had nothing to do with it. So that's why I want []—the truth." The captain did not end there. He said:

> I don't want to bring [your wife] in here. . . . [I]f I have to bring [her] in here, I will. But she might find out a whole lot more than what she wants to know from me rather than coming from you. And again, if she can put herself right in the middle of things, if she's not being— if she's not honest about it, because that makes her basically an accessory in the court's eyes.
>
> . . . .
>
> And again, you know, *if [your wife] gets in trouble, who's going to be there to take care of her mother and the rest of the family?* If this is all because of some bad decisions or choice that you made. I'm not judging you at all, okay. Don't think I'm judging. It ain't my job to judge you. My job is the truth. But, again, I want the truth from you. I don't want to be getting some other—somebody else's version of the truth. And I'm not looking to get somebody else in trouble.
>
> . . . .
>
> Bob, do you really, really want to bring your wife in the middle of this?

(Emphasis added.) If that were not enough, the captain repeated: "Do you really want me to bring her into this?" When Eakin responded, "No," the captain said:

> Okay. Then you need to be honest with me about what happened. Everything. Don't sit here and downplay it anymore. Let's just get to it because I've got to—I've got an obligation here. My job is to find out the truth. And I'm going to find the truth. I mean I don't ask a lot of questions I don't already know all the answers to. Like I said, I've been doing this a long time. So, you know, I just need you to be

> honest with me. Tell me what happened and how it happened so I can get this straight and get it in your words. *Because I know [your wife] well enough. She's not going to hold up well. And she's—or like you said, she's under enough stress.* That's not good. And she shouldn't have to be put through that.

(Emphasis added.) Eakin acknowledged that his wife was under stress. Agreeing, the captain said, "Right. She doesn't—she don't need more. So I need to know what happened between you and [the child]." After another exchange, the captain repeated:

> "I want to get the truth from you. *I don't want to have to bring [your wife] and your boys in here"* and "do you really want to put [your wife] through this? Really? 37 years, you're going to do that to her?" and "you put her through this. You think that couldn't possibly be the straw that breaks the camel's back here?

(Emphasis added.) Then, the captain commanded: "And what I want you is to tell me about that incident, how that happened, *because otherwise you're going to, you know, you're giving me no choice, Bob. I don't want to bring her in the middle of this. She don't need it. She don't deserve it."* (Emphasis added.) At this point, Eakin partially confessed.

These comments by the captain cannot be characterized as anything but a "psychological confession-connected inducement." *Hilpipre*, 242 N.W.2d at 312. The emphasized portions implied Eakin's wife could be incarcerated, leaving her mother and children to fend for themselves. *See State v. Polk*, 812 N.W.2d 670, 676 (Iowa 2012) (finding promise of leniency in officer's statement, "Man if you don't want to do this for you, do this for your kids. They need their dad around. [] Just don't forget you got kids that are depending on you. They need their pops around"). The comments also played on Eakin's fears of the toll the allegations would take on his wife. *Cf. id.* (noting other courts have "cried foul when

interrogators imply a confession will reduce the suspect's time away from his or her children"). The captain implicitly assured Eakin his wife would be insulated from charges if Eakin confessed.

The misleading nature of the captain's comments about the wife's possible culpability exacerbated the coercive nature of the promise. *See State v. Quintero*, 480 N.W.2d 50, 50 (Iowa 1992) ("The officer's statements were made even worse by being misleading."). There was no indication the wife would "get in trouble" if she were called in for questioning as the captain indicated. Although he later suggested the wife would get in trouble only if she were "dishonest," he implied her fate was in his hands. As the supreme court stated:

> [T]o manipulate the defendant's decision by prolonged emphasis on its effect on the fate of his wife is a dangerous course at best, in that there is a good possibility that some defendants, even innocent ones, might under the circumstances make false incriminating statements to procure the release of a loved one.

*Hilpipre*, 242 N.W.2d at 312 (quoting *United States v. Hill*, 340 F. Supp. 344, 350 (E.D. Pa. 1972)); *see also Quintero*, 480 N.W.2d at 50 (concluding a defendant's incriminating statements "were coerced" where the officer "speculated that both [the defendant] and his nephew would be harmed in prison and hinted that the boy would be abused either physically or sexually" and "speculated that, unless [the defendant's] statements matched those of his nephews, he would anger the judge and jury and suffer greater punishment"). We conclude the captain's comments constituted promises of leniency.

The next question is whether the error in admitting the statements was harmless. *See Howard*, 825 N.W.2d at 41; *cf. Quintero*, 480 N.W.2d at 52 ("We need not speculate whether admission of a coerced confession could ever be

harmless."). "We presume the defendant's rights have been prejudiced unless the State can affirmatively establish otherwise." *Howard*, 825 N.W.2d at 41–42. "The State overcomes the presumption of prejudice if it can establish that there was overwhelming evidence of the defendant's guilt." *Id.* at 42. We cannot assess the question at this juncture because there was another error—the giving of the victim non-corroboration instruction. We turn to that issue.

## II.    Jury Instruction

The non-corroboration instruction stated: "There is no requirement that the testimony of an alleged victim of sexual offenses be corroborated, and the alleged victim's testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." Eakin contends the district court erred in overruling his objection to the instruction.

The supreme court recently reviewed virtually identical instructions. *See State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) (reviewing instruction that stated, "There is no requirement that the testimony of an alleged victim of sexual offenses be corroborated"); *State v. Kraai*, 969 N.W.2d 487, 490 (Iowa 2022) (reviewing instruction that stated, "There is no requirement that the testimony of a complainant of sexual offenses be corroborated"). The court found the instructions improper. *See Mathis,* 971 N.W.2d at 519 (applying the reasoning of *Kraai*); *Kraai,* 969 N.W.2d at 491–92 (concluding the instruction was improper because it "unduly emphasized the complainant witness's testimony"). *Mathis* and *Kraai* are controlling. Based on that precedent, we conclude the non-corroboration instruction was erroneous. *See Kraai*, 969 N.W.2d at 490 (reviewing instructions for errors of law).

The instructional error is not mitigated by the remaining instructions. *See id.* at 496 ("If a particular instruction was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved." (internal quotation omitted)). Although the district court provided additional instructions on how to assess the testimony of the child and Eakin, neither those instructions nor any others addressed corroboration of witness testimony. *See id.* at 493.

We are left with the question of whether Eakin was prejudiced by the non-corroboration instruction. The prejudice standard in this context is as follows:

> When a court erroneously gives or refuses a jury instruction, we presume prejudice and reverse unless the record affirmatively establishes there was no prejudice. When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice. The presumption of prejudice is overcome when the jury received "strong evidence" of a defendant's guilt.

*Id.* at 496–97 (internal quotations omitted). The presumption of prejudice unless the State shows otherwise is the same harmless error standard applied in the promissory leniency context. *See Howard*, 825 N.W.2d at 41–42. That said, the evidence needed to overcome the presumption must be "overwhelming" rather than "strong" in the promissory leniency context. *Id.* at 42.

In *Kraai,* the court found strong evidence of the defendant's guilt, "including substantial corroboration of [the complaining witness's] testimony." 969 N.W.2d at 497. In contrast, the court found no corroboration of the complaining witnesses' testimony in *Mathis.* 971 N.W.2d at 521. This case presents a mixed bag.

As noted at the outset, the jury found Eakin guilty of three counts of third-degree sexual abuse.  Count III charged a crime between January 3, 2018, and January 2, 2019.  Count IV charged a crime between January 3, 2019, and January 2, 2020; and count V charged a crime between January 3, 2020, and May 6, 2020.[1]  The State contends the prosecutor "offered evidence to corroborate [the child's] testimony that Eakin had her perform at least three sex acts during the relevant time period."

We agree with the State as to count V.  The child's mother testified that, on April 26, 2020, she caught Eakin in the child's room with the door closed and without pants or underwear.  She "was very shocked and devastated."  When confronted, Eakin expressed shame.  The mother's testimony corroborated the child's testimony and was sufficient to overcome the presumption of prejudice flowing from the improper non-corroboration jury instruction.  The mother's testimony, together with the child's testimony, also constituted "overwhelming" evidence that overcame the presumption of prejudice flowing from the captain's promise of leniency.  Accordingly, the jury's finding of guilt on count V is affirmed.

Counts III and IV are a different matter.  The mother did not testify to other sex acts.  Nor does a jail call cited by the State speak to those crimes.  And, in

---

[1] The supreme court has stated "any uncertainty as to the precise date is immaterial" for purposes of deciding the sufficiency of the evidence supporting a finding of guilt.  *See State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999).  But this court has noted that, where the jury "was instructed the alleged sexual assaults occur[ed] during two discrete ranges of days," the instruction became the law of the case and the State was required to prove the sexual assaults occurred between those dates.  *See State v. Parmenter*, No. 18-1997, 2019 WL 6907457, at *6 (Iowa Ct. App. Dec. 18, 2019).  In light of our conclusion that there was not "strong" evidence of prior sex acts on counts III and IV, we need not rest our harmless error analysis on the dates of those sex acts.

light of our conclusion that the police captain made a promise of leniency, we cannot rely on any statements Eakin made after the promise. In the absence of evidence corroborating counts III and IV and in the absence of "strong" evidence to support those counts, we conclude the improper non-corroboration instruction was prejudicial as to those counts, and we reverse and remand for further proceedings on those counts. *See Mathis*, 971 N.W.2d at 521. It follows that, if the evidence was not sufficiently "strong" to support those counts, it also was not "overwhelming" to overcome the presumption of prejudice flowing from the promise of leniency. That promise also requires reversal and remand.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**