COURT OF APPEALS
DECISION
DATED AND FILED

November 15, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2108-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF441

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

DARIUS HARRIS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Racine County: EMILY S. MUELLER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Darius Harris appeals from a judgment of conviction entered after a jury found him guilty of being a felon in possession of a firearm contrary to WIS. STAT. § 941.29(1m)(b) (2021-22).[1]  Harris asserts that his confession to the police should have been suppressed because it was involuntary. We affirm.

## *Background*

¶2    On March 28, 2017, Racine police officers responded to a report of shots fired between the driver of a Ford Explorer and a pedestrian.  In the course of their investigation, officers obtained surveillance footage from a nearby apartment building that showed a black male, later identified as Harris, enter the building's basement and place a bag underneath some clothing.  The officers searched the bag and located a handgun.  While they were still in the basement, a man whom they identified as Harris walked into the basement.  The officers took Harris into custody, transported him to the Racine Police Department, and conducted a videotaped interrogation during which he made incriminating statements.

¶3    The State charged Harris with one count of possession of a firearm by a felon.  Prior to trial, Harris raised a ***Goodchild***[2] challenge to the voluntariness of his statements during the interrogation.  The circuit court held a hearing in December 2017 at which both of the officers who interrogated Harris testified.  After hearing the testimony and reviewing the video recording of the interrogation, the circuit court made findings of fact concerning Harris and the officers' conduct during the interrogation.  With respect to Harris, the court found that he had

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] *See **State ex rel. Goodchild v. Burke***, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

previously been arrested and thus "sort of knew what the drill is." The court found that Harris waited alone in the interview room "for a relatively long time and was obviously bored" but "wasn't subject to any discomfort that I could see." It also found that Harris's physical appearance, lack of slurred speech, and responsive answers to questions did not suggest that he was intoxicated or unable to answer questions during the interrogation. With respect to the officers' conduct during the interview, the court found that: (1) the officers expressed skepticism at Harris's initial denial of involvement in the shooting but did not threaten or badger him; (2) the officers gave Harris the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966); (3) the officers did not make inappropriate promises or representations to Harris; and (4) the officers did not make misrepresentations to Harris. Based upon these findings, the court concluded that Harris's statements were voluntary.

## *Discussion*

¶4      When reviewing a circuit court's "determination on the voluntariness of a defendant's confession," we uphold the court's factual findings "unless they are clearly erroneous." *State v. Agnello*, 2004 WI App 2, ¶8, 269 Wis. 2d 260, 674 N.W.2d 594 (2003). However, we review the application of the facts to constitutional principles de novo. *Id.* Here, we do not understand Harris to be challenging any of the court's factual findings. His arguments focus on the legal

significance of the facts—that is, whether they show that the police violated his constitutional rights by obtaining an involuntary confession.[3]

¶5     "The Fourteenth Amendment of the Constitution and [a]rticle I, [s]ection 8 of the Wisconsin Constitution require a statement to be voluntary in order to be admitted into evidence." *State v. Vice*, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1. "[S]tatements are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by … the State exceeded the defendant's ability to resist." *Id.*, ¶29 (omission in original; citation omitted). The State must show by a preponderance of the evidence that the defendant made his statements voluntarily. *State v. Moore*, 2015 WI 54, ¶55, 363 Wis. 2d 376, 864 N.W.2d 827.

¶6     We evaluate voluntariness "in light of all the circumstances surrounding the interrogation and" balance the actions of law enforcement against the defendant's personal characteristics. *Id.*, ¶56. A finding of "[c]oercive or improper police conduct is a necessary prerequisite for a finding of involuntariness." *State v. Hoppe*, 2003 WI 43, ¶37, 261 Wis. 2d 294, 661 N.W.2d 407. "If our analysis of the facts does not reveal coercion or improper police pressures, there is

---

[3] Harris suggests that we need not defer to the circuit court's factual findings because a video recording of the interview exists, which he asserts places us "in the same position as the circuit court to determine what occurred during the interrogation and therefore independently make[] that determination." *See State v. Rejholec*, 2021 WI App 45, ¶17, 398 Wis. 2d 729, 963 N.W.2d 121. We do not necessarily agree with this argument, given that the court also based its decision on the in-court testimony of the officers who interrogated Harris. *Cf. State v. Jimmie R.R.*, 2000 WI App 5, ¶39, 232 Wis. 2d 138, 606 N.W.2d 196 (1999) (reviewing factual question whether juvenile understood that false statements are punishable de novo because "the only evidence on this question [was] the videotape itself"). But we need not resolve this argument because we do not understand Harris to challenge any of the court's factual findings.

no need for us to engage in the balancing test between the suspect's personal characteristics and those nonexistent pressures." *Vice*, 397 Wis. 2d 682, ¶31.

¶7 In evaluating police conduct, we consider multiple factors, including: (1) the length of questioning; (2) the general conditions surrounding the questioning; (3) whether the police used "any inducements, threats, methods or strategies" to compel responses to their questions; (4) "any excessive physical or psychological pressure"; and (5) whether the defendant was given *Miranda* warnings. *Hoppe*, 261 Wis. 2d 294, ¶39. In evaluating the defendant's personal characteristics, we consider the defendant's "age, education and intelligence, physical and emotional condition, and prior experience with law enforcement." *Id.*

¶8 Applying the *Hoppe* standard, we first examine the aspects of the officers' conduct that Harris contends rendered his statements involuntary. First, Harris notes that he was left alone in an interrogation room for almost two hours before questioning began. According to the video, Harris was brought to the interrogation room at approximately 5:00 p.m. on March 28, 2017. Police removed his handcuffs, brought him water, and left him alone in the room for approximately one hour and forty minutes. During that time, Harris sat at a table in the room, paced back and forth several times, laid down on the ground, attempted to look through the blinds of a window in the room, and summoned officers several times to ask when they would speak to him. While Harris displayed impatience at times with having to wait, there is no indication from the video that he was in any acute physical or mental distress.

¶9 The interrogation began at approximately 6:40 p.m. and lasted about thirty minutes. In total, Harris was kept in the interrogation room for just under three hours. When examined in light of prior Wisconsin decisions addressing

5

voluntariness, neither the length of the interrogation nor the total amount of time Harris spent in the interrogation room was coercive or improper. *See Moore*, 363 Wis. 2d 376, ¶62 (stating that five and one-half hours of intermittent interrogation during an eleven-hour period in police custody did not render the defendant's statements involuntary); *State v. Markwardt*, 2007 WI App 242, ¶45, 306 Wis. 2d 420, 742 N.W.2d 546 (concluding that neither two-hour interrogation nor longer period of detention constituted "coercive or improper police conduct").

¶10    Harris next challenges the officers' repeated statements challenging the truthfulness of his denials of involvement in the shooting. He argues that by "badgering" him repeatedly to tell the truth, using raised voices and profanity, the officers threatened him and coerced his confession. We disagree; as the circuit court noted, police can express dissatisfaction and skepticism about a suspect's statements. *State v. Deets*, 187 Wis. 2d 630, 636, 523 N.W.2d 180 (Ct. App. 1994). They need not acquiesce when a suspect makes statements they know are not true. Here, the investigators did not transgress constitutional limits by telling Harris that his initial denials of involvement were not consistent with other evidence they had obtained and encouraging him to be honest with them.

¶11    Harris also argues that the investigators improperly pressured him by suggesting that he may have acted in self-defense and that if that was the case, he would not be charged with attempted homicide. The circuit court acknowledged its initial concern with one officer's promise that such a charge would not be filed but was convinced that "it wasn't within the context of making promises or inappropriate representations to [Harris]. They were talking about what his story was." We agree; the officer told Harris that he could not promise anything but that if Harris did act in self-defense, he would not be charged with attempted homicide. Though the officer's statement could be construed as a promise, it was not

6

impermissibly coercive because it was fulfilled. *See State v. Lemoine*, 2013 WI 5, ¶¶27-28, 345 Wis. 2d 171, 827 N.W.2d 589; *State v. Owens*, 148 Wis. 2d 922, 931, 436 N.W.2d 869 (1989). In sum, the three factors Harris emphasizes do not persuade us that the police coerced him into confessing.

¶12 Beyond the facts Harris highlights, three other aspects of Harris's interrogation further support our conclusion that the police did not act in a coercive or otherwise improper manner. First, the police gave Harris *Miranda* warnings before they questioned him, and Harris signed a written waiver of those rights. In addition, the officers did not use physical force on Harris during questioning. Nor did they make any threats of physical violence or of any other kind. Finally, the general conditions in which the officers questioned Harris were not coercive. Harris was questioned in a closed interrogation room. He was not handcuffed and was able to move around the room. The officers did not question Harris for an extended period of time without a break. The bulk of the interrogation took place over a thirty-minute period, which was followed by several brief periods of follow-up questioning over the ensuing hour. Before and during the interrogation, officers gave Harris three bottles of water in response to his requests, and after the thirty-minute session they allowed him to use the telephone.

¶13 Because the record reveals no coercive or improper conduct by the officers who interrogated Harris, we need not move to the second prong of the *Hoppe* standard and balance their conduct against his personal characteristics. *See State v. Berggren*, 2009 WI App 82, ¶30, 320 Wis. 2d 209, 769 N.W.2d 110 ("if there is no evidence of either physical or psychological coercive tactics by the detectives, the balancing test is unnecessary"). Given the police conduct here, Harris's "personal characteristics, while certainly relevant to our analysis, are simply not dispositive of the issue of voluntariness." *See State v. Clappes*, 136

Wis. 2d 222, 239-40, 401 N.W.2d 759 (1987) ("While a defendant's personal characteristics are relevant, they only become determinative in the voluntariness analysis when there is something against which to balance them."). For these reasons, we conclude that the State carried its burden of proving that Harris's statements while in police custody were made voluntarily.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.